# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 21-27V
UNPUBLISHED

|  |  |
|---|---|
| CANDICE KILLPACK, | Chief Special Master Corcoran |
| Petitioner, | Filed: June 2, 2023 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Special Processing Unit (SPU); Entitlement to Compensation; Ruling on the Record; Findings of Fact; Statutory Six Month Requirement Influenza (Flu); Shoulder Injury Related to Vaccine Administration (SIRVA) |
| Respondent. | |

*David John Carney, Green & Schafle LLC, Philadelphia, PA, for petitioner.*

*Benjamin Patrick Warder, U.S. Department of Justice, Washington, DC, for respondent.*

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On October 3, 2019, Candice Kilpack filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 3, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). The parties disputed both compensation and the amount to be awarded, so the matter was submitted for an SPU Motions Day hearing.

---

[1] Because this unpublished ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below I find that Petitioner is entitled to compensation, and I award **$73,000.00** in damages, representing compensation for actual pain and suffering.

## I.      Relevant Procedural History

More than a year after the case's initiation, Petitioner filed a status report in May 2022 requesting permission to file a motion for a ruling on the record. ECF No. 31. Petitioner filed a motion for a ruling on the record and a brief in support of damages on June 17, 2022. Petitioner's Motion for Ruling on the Record and Brief in Support of Damages ("Mot."), ECF No. 34. Petitioner argued therein that she had met the table definition of a SIRVA (*id.* at 12-15), and requested an award of $90,000.00 for actual pain and suffering. *Id.* at 26.

Respondent filed his opposition on September 1, 2022. Respondent's Rule 4(c) Report/Response to Petitioner's Motion for Ruling on the Record and Damages Brief ("Opp."), ECF No. 38. Respondent argued that Petitioner had not met the severity requirement of the Vaccine Act. *Id.* at 10-11. Respondent also argued that an award of not-more-than $70,000.00 for pain and suffering is more appropriate in this case (assuming entitlement had been determined). *Id.* at 23.

Petitioner filed a reply on September 15, 2022, addressing Respondent's arguments. Petitioner's Reply in Support of Petitioner's Motion for Ruling on the Record and Brief in Support of Damages ("Reply"), ECF No. 39.

## II.     Petitioner's Medical Records

A complete recitation of the facts can be found in the Petition, the parties' respective pre-hearing briefs, and in Respondent's Rule 4(c) Report.

Petitioner received a flu vaccine on October 3, 2019. Ex. 10.[3] She first complained of left shoulder pain on October 24, 2019 to Dr. German Ellsworth at Layton WorkMed, describing her pain level as six out of ten. Ex. 3 at 4. Dr. Ellsworth documented the date of injury as October 3, 2019, and noted Petitioner reported immediate onset of pain. *Id.* She continued to complain of shoulder pain in November and saw Dr. Ellsworth again on November 12, 2019. At that time, she showed a limited range of motion, pain, and some weakness. Ex. 3 at 5.

---

[3] The vaccine record does not indicate the site of administration, and Petitioner has confirmed that her employer did not retain a copy of the consent form. Ex. 14 at 1.

On December 11, 2019, Petitioner was evaluated for physical therapy. Ex. 3 at 8. Petitioner reported pain levels as five out of ten, and a cortisone injection was administered. *Id.* at 8-9. On December 12, 2019, Petitioner had her first physical therapy sessions, and reported numbness and tingling, loss of strength, and difficulty with daily tasks due to her injury. Ex. 13 at 14. Petitioner attended a second physical therapy session on December 16, 2019, reporting increased pain "for unknown reason". Ex. 5 at 42-49.

Petitioner had a follow-up at Layton WorkMed on December 17, 2019. Ex. 3 at 8. Her pain was described as three out of ten, and occurred with movement (especially overhead), and sleeping. She was told to discontinue physical therapy because it was not helpful. *Id.* A day later, Petitioner was evaluated at Intermountain Orthopedic for constant left shoulder pain that started after a flu vaccine. Ex. 11 at 120. Her symptoms were "suggestive of a frozen shoulder" and another cortisone injection was administered. *Id.*

Petitioner sought medical care twice in the winter of 2020. On January 14, 2020, Petitioner presented to urgent care for vomiting, body aches, painful urination, and low back pain. Ex. 12 at 4-5. She also had an obstetrics and gynecology appointment on February 19, 2020. Ex. 12 at 9-19. There was no record of shoulder pain at either appointment.

The next reference to shoulder pain in a medical record occurred six months later, on June 30, 2020, when Petitioner returned to Intermountain Orthopedic for "steadily increasing" shoulder pain. Ex. 11 at 70. Her pain was noted as "likely tendinopathy related", and a third steroid injection was administered. *Id.* The record notes that Petitioner was "had not had any home exercises or physical therapy", and that she had three months of relief after the December 19, 2019, steroid injection. *Id.*

Petitioner next reported shoulder pain that had been increasing over the past few weeks on October 6, 2020. Ex. 11 at 39. She was assessed with tendinopathy in the biceps, supraspinatus, infraspinatus tendons, subacromial impingement, and bursa swelling. *Id.* She received a third cortisone injection on October 7, 2020, and was diagnosed with subacromial tendinitis of the left shoulder. Ex. 11 at 7. Petitioner attended three more physical therapy sessions between October 22 and November 19, 2020, which did not provide much relief. Ex. 1 at 233-39, Ex. 18 at 686-89. The physical therapy records note that Petitioner's injury resulted "from a flu shot last year." *Id.* at 233. An MRI on November 25, 2020, revealed minimal tendinosis without evidence of a focal rotator cuff tear. Ex. 9 at 5.

Her next complaint of shoulder pain was nine months later, on August 13, 2021. Ex. 18 at 399. She reported pain levels of one or two at rest, but six to seven out of ten when sleeping or moving her arm.

### III.   Affidavit Evidence

Petitioner submitted three affidavits in support of her claim. Ex. 2, 15, 16. Therein, Petitioner describes her injury and course or treatment, and how her injury impacted her life.

### IV.   Parties' Arguments

Petitioner argues that she is entitled to compensation because she meets the six-month severity requirement (Reply at 1-2) and the requirements for a SIRVA as described in the Vaccine Injury Table. Mot. at 12-15. Respondent argues that Petitioner has not met the severity requirement of the Vaccine Act. Opp. at 10-11.

### V.   Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

---

[4] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health &*

*Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Petitioner Meets the Severity Requirement

The first issue to be resolved is whether Petitioner has demonstrated that she suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

There is no dispute that Petitioner received the flu vaccine on October 3, 2019, and she therefore must demonstrate by preponderant evidence that her residual symptoms continued at least through April 3, 2020. *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's Guillain-Barré syndrome resolved less than two months after onset).

The record establishes that Petitioner's initial treatment occurred between October 24 and December 18, 2019, followed by a six-month gap. However, when she returned for additional treatment she continued to report that her shoulder pain was linked to the vaccination, supporting the conclusion that she continued to experience the effects of her injury even during the period of non-treatment. Ex. 1 at 233. Further, in June 2020 she described her pain as steadily increasing, but that she had three months of relief since the steroid injection. Ex. 1 at 109-10. It is reasonable that she delayed in seeking treatment in early 2020 because the cortisone injection was initially successful, but after it wore off decided to continue treating.

Respondent notes that she had two intervening medical appointments that did not mention shoulder pain in the winter of 2020. Opp. at 10-11. The cited appointments, however, were for unrelated medical issues, including an urgent care visit and a gynecology exam. It is understandable that she would not mention her shoulder pain during these visits. Accordingly, severity is established on this record.

### B. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

### 1. No Prior Left Shoulder Condition or Injury Would Explain Petitioner's Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent has not contested that Petitioner meets this criterion, and I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The medical records also, establish onset of her injury close-in-time to vaccination. Petitioner first sought treatment on October 24, 2019, and reported immediate pain following the vaccination. Ex. 3 at 4. In the subsequent timeframe, she consistently reported to treaters that she had experienced symptoms since the vaccination. Ex. 11 at 118 (December 18, 2019 record stating that Petitioner has had constant pain since flu shot "about 2 months ago").

### 3. Petitioner's Pain was Limited to her Left Shoulder

I also find that there is a preponderance of evidence that Petitioner's pain was limited to her left shoulder. Respondent does not contest this aspect of Petitioner's claim, and the records consistently report shoulder pain and loss of range of motion in her left shoulder, which is consistent with other SIRVA cases. Petitioner's medical procedures were also limited to her left shoulder. Accordingly, preponderant evidence establishes that Petitioner's pain was limited to her left shoulder.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

### C. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on October 3, 2019, in the United States. Ex. 2 at 2; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 2 at 2; Section 11(c)(1)(E) (lack of prior civil award).

As stated above onset of Petitioner's left shoulder pain was within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). I have also found that there is no other condition which would explain Petitioner's current symptoms. 42 C.F.R. § 100.3(a)(XIV)(B). Therefore, Petitioner has satisfied all requirements for a Table SIRVA.

The last criteria which must be satisfied by Petitioner involves the duration of his SIRVA. For compensation to be awarded, the Vaccine Act requires that a petitioner suffer the residual effects of his or her left shoulder injury for more than six months or required surgical intervention. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). As discussed above, the records demonstrate that Petitioner suffered the residual effects of her shoulder injury for more than six months. Thus, this requirement is also met.

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## VI.   Damages

The parties have also briefed damages in this case. Petitioner requests an award of $90,000.00 for actual pain and suffering. Mot. at 27; Reply at 10. Respondent argues that the record only supports an award of $70,000.00 for past pain and suffering. Opp. at 22.

### A.  Legal Standards for Damages Awards

In several recent decisions, I have discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within the SPU. I fully adopt and hereby incorporate my prior discussion in Sections III and IV of *Leslie v. Sec'y Health & Hum. Servs*., No. 18-0039V, 2021 WL 837139 (Fed. Cl. Spec. Mstr. Jan. 28, 2021) and *Johnson v. Sec'y of Health & Hum. Servs.,* No. 18-1486V, 2021 WL 836891 (Fed. Cl. Spec. Mstr. Jan. 25, 2021), as well as Sections II and III of *Tjaden v. Sec'y of Health & Hum. Servs.,* No. 19-419V, 2021 WL  837953 (Fed. Cl. Spec. Mstr. Jan. 25, 2021).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[5]

## B. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed, leaving only the severity and duration of that injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including all medical records, declarations, plus all filings submitted by both Petitioner and Respondent. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Ms. Killpack asserts that the severity of her injury is comparable to six cases awarding between $85,000.00 and $100,000.00 for pain and suffering.[6] In particular, Petitioner emphasizes that she suffered a moderate to severe SIRVA with significant pain for over two years, and treated through physical therapy, x-rays, numerous medical visits, and cortisone injections. Mot. at 25-26. She thus deems $90,000.00 a fair sum for actual pain and suffering.

---

[5] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

[6] *Young v. Sec'y of Health & Human Servs.*, No. 15-1241V, 2019 WL 396981 (Fed. Cl. Spec. Mstr. Jan. 4, 2019) (awarding $100,000 in pain and suffering); *Gentile v. Sec'y of Health & Human Servs.*, No. 16-980V, 2020 WL 3618909, at 1–2 (Fed. Cl. June 5, 2020) (awarding $85,000 for pain and suffering, and $500/year in future pain and suffering); *Dhanoa v. Sec'y of Health & Human Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018) (awarding $85,000 for pain and suffering, and $10,000 in future pain and suffering); *Weber v. Sec'y of Health & Human Servs.*, No. 17-399V, 2019 WL 2521540 (Fed. Cl. Apr. 9, 2019) (awarding $85,000 for pain and suffering); *Harper v. Sec'y of Health & Human Servs.*, No. 18-202V, 2021 WL 5231980 (Fed. Cl. Spec. Mstr. Oct. 8, 2021) (awarding $92,000 for pain and suffering); Accetta v. *Sec'y of Health & Human Servs.*, No. 17-1731V, 2021 WL 1718202 (Fed. Cl. Spec. Mstr. Mar. 31, 2021) (awarding $95,000 for pain and suffering).

Respondent, by contrast, submits that an award of $70,000.00 is appropriate. Opp. at 19-23. Petitioner suffered a comparatively minor injury, and received intermittent treatment with several large gaps between medical care. Respondent cites to *Knauss v. Sec'y of Health & Hum. Servs.* in support of his argument. No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00 for past pain and suffering).

Based on the medical records, I conclude that Ms. Killpack suffered a mild-to-moderate SIRVA for approximately twenty-four months. She sought treatment soon after her vaccination, and initially her pain was mostly reported as moderate to severe (three-to-eight out of ten) for the first three months. Further, while she treated for over two years, there were significant periods of little to no pain following steroid injections. For example, following the first steroid injection in 2019 she reported no pain for three months and did not seek treatment for six months. There was another significant gap in treatment between November 2020 and August 2021, indicating that she did not experience much pain during that time. Further, Petitioner's treatment was not very extensive, consisting of three cortisone injections, an MRI, X-rays, but only six physical therapy sessions. And she never obtained any surgical treatment either.

The overall severity of the injury at issue herein is thus not high enough to warrant the $90,000.00 requested by Petitioner in her motion. I note that the SIRVA cases cited by Petitioner involved more significant treatment over longer periods of time. For example, in *Cooper*, the petitioner's treatment consisted of thirty-five physical therapy session over two years, and moderate pain reported for that time. *Cooper*, 2018 WL 6288181 at *12. In contrast, here Petitioner attended only two physical therapy sessions and reported significantly lower pain levels throughout her treatment period.

By contrast, I agree with Respondent that this case is more comparable to cases that awarded below-median amounts for a SIRVA. Opp. at 22-23. Further, I find this case most analogous to *Allner v. Sec'y of Health & Hum. Serv.*, No. 19-1048, 2022 WL 6962656 (Fed. Cl. Spec. Mstr. Sept. 9, 2022) (awarding $60,000.00 for actual pain and suffering). Both Petitioner and the injured in *Allner* experienced a mild SIRVA, underwent treatment over several years, and exhibited a good recovery. *Id.* at *5-6. However, while *Allner* involved a longer treatment period, the petitioner there delayed in seeking treatment.

I also note that, like in *Allner*, Petitioner required minimal treatment or medical intervention for significant periods of time. Notably, there are multiple, lengthy gaps in Petitioner's treatment, suggesting that her pain was not so severe as to require frequent

medical attention. The fact that Petitioner could cope with her injury during these periods counsels in favor of a lower pain and suffering award.

Taking all of the above into account, I find that $73,000.00 for pain and suffering is fair compensation.

## VII.    Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that Petitioner has satisfied the Table requirements for a SIRVA and is entitled to compensation.**

I also find that, for all of the reasons discussed above and based on consideration of the record as a whole, **$73,000.00 represents a fair and appropriate amount of compensation for Ms. Killpack actual pain and suffering.**[7] In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[8]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[7] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.